J-S39032-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

DR. K. BERNARD SCHADE  :  IN THE SUPERIOR COURT OF
  :  PENNSYLVANIA
   Appellant  :
  :
  :
  v.  :
  :
  :
PHILIP LAUER  :  No. 649 EDA 2020

Appeal from the Order Entered January 14, 2020
In the Court of Common Pleas of Monroe County Civil Division at No(s):
No. 2019-05028

BEFORE:  LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED SEPTEMBER 23, 2020**

Dr. K. Bernard Schade (Schade) appeals *pro se* from the order filed in

the Court of Common Pleas of Monroe County (trial court) granting the Motion

for Judgment on the Pleadings in his criminal malpractice action against his

previous attorney, Philip Lauer (Lauer), because it was not filed within the

applicable statute of limitations.  We affirm.

**I.**

We take the following background facts and procedural history from the

trial court's October 18, 2019 and January 14, 2020 opinions, this Court's

November 3, 2016 memorandum in Schade's criminal appeal and our

independent review of the certified record.  Because the allegations in this

_____

[*] Retired Senior Judge assigned to the Superior Court.

matter involve Lauer's legal representation of Schade in his prior consolidated criminal cases, 681-2014 and 917-2014, we briefly describe the pertinent history of that litigation.

**A.**

Lauer entered his appearance in Schade's criminal cases on April 2 and 24, 2014. On July 15, 2014, with Lauer's assistance, Schade entered a negotiated guilty plea to one count of Statutory Sexual Assault and two counts of Possession of Child Pornography.[1] The plea related to Schade having sexual relations with a person less than sixteen years of age between 1995 and 1997 and his possession of 1,101 images of child pornography. In exchange, the Commonwealth *nolle prossed* the charges of Rape-Forcible Compulsion, Involuntary Deviate Sexual Intercourse with Person Less than Sixteen Years of Age, Aggravated Indecent Assault with Person Less than Sixteen Years of Age, Corruption of Minors and 1,099 additional counts of possessing child pornography. (*See Commonwealth v. Schade*, 2016 WL 6519102, unpublished memorandum, at *1 (Pa. Super. filed Nov. 3, 2016)). At a January 7, 2015 hearing, the court found Schade to be a Sexually Violent Predator and sentenced him to an aggregate term of not less than fifty-four nor more than 120 months' incarceration.

---

[1] 18 Pa.C.S. §§ 3122.1(a) and 6312(d), respectively.

On April 29, 2015, Schade filed a *pro se* petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9542-9546, which the court dismissed as prematurely filed on May 11, 2015. On May 21, 2015, Lauer filed a Petition to Withdraw as Counsel. On June 24, 2015, before the court ruled on the Motion to Withdraw, Wieslaw T. Niemoczynski, Esquire (new counsel) entered his appearance on behalf of Schade. On July 7, 2015, new counsel filed a counseled PCRA petition alleging the ineffective assistance of Lauer in unlawfully inducing his guilty plea. After a hearing, the PCRA court denied the petition. On November 3, 2016, this Court affirmed the PCRA court, finding after our own independent review, that:

> Although Appellant alleges that ineffective assistance of counsel induced him to plead guilty, the record belies that statement. … Based upon our review of record and the totality of the circumstances, we conclude that Appellant knowingly and voluntarily entered the guilty plea. … [W]e conclude that Mr. Lauer acted reasonably in advising Appellant to accept the guilty plea and that Appellant knowingly, voluntarily, and intelligently participated in the colloquy. Thus, no manifest injustice occurred.

(**Id.** at *4). The Pennsylvania Supreme Court denied further review on August 2, 2017. (**See id.**, *appeal denied*, 169 A.3d 1082 (Pa. 2017)).

**B.**

On July 1, 2019 Schade filed a criminal malpractice Complaint against

Lauer, alleging that Lauer breached his implicit contract[2] when he "failed to

---

[2] Criminal malpractice actions can sound in trespass or assumpsit.  An action in trespass is similar to a civil professional malpractice claim and requires the following elements:

> (1) The employment of the attorney;
>
> (2) Reckless or wanton disregard of the defendant's interest on the part of the attorney;
>
> (3) The attorney's culpable conduct was the proximate cause of an injury suffered by the defendant/plaintiff, *i.e.*, "but for" the attorney's conduct, the defendant/plaintiff would have obtained an acquittal or a complete dismissal of the charges;
>
> (4) As a result of the injury, the criminal defendant/plaintiff suffered damages;
>
> (5) Moreover, a plaintiff will not prevail in an action in criminal malpractice unless and until he has pursued post-trial remedies and obtained relief which was dependent upon attorney error; additionally, although such finding may be introduced into evidence in the subsequent action it shall not be dispositive of the establishment of culpable conduct in the malpractice action.

[An action in assumpsit] is a contract claim and the attorney's liability in this regard will be based on terms of that contract.  Thus, if an attorney agrees to provide his or her best efforts and fails to do so an action will accrue.  Of course, an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.  …  It does not require a determination by an appellate court of ineffective assistance of counsel, nor does the client need to prove innocence.

***Tucker***, ***infra*** at 115.

exercise the ordinary skill and knowledge possessed by attorneys in the community, relating to [the] time-barred [sexual assault] claims … and the pornography allegations" and "did not understand nor grasp the relevant law, facts and evidence but … negligently, carelessly and unskillfully" advised him to plead guilty instead of going to trial. (Complaint, 7/01/19, at 5, Paragraph 12, at 9, Paragraph 22, at 11, Paragraphs 29-30; *see id.* at 12, Paragraph 33).

Lauer filed an Answer and New Matter, alleging, among other affirmative defenses, that Schade's claims were barred by the applicable statute of limitations. (*See* Answer and New Matter, 8/01/19, at 7, Paragraph 4). Schade filed Preliminary Objections to Lauer's Answer and New Matter, claiming, in pertinent part, that Paragraphs six through thirty-nine of Lauer's New Matter should be stricken for lack of specificity. The trial court overruled the Preliminary Objections on October 18, 2019.

On November 18, 2019, Schade filed a Motion for Reasonable Accommodation in which he requested that Lauer serve him with all pleadings and motions at Smart Communications/PA DOC, SCI Coal Township, K. Bernard Schade, MA 1290, P.O. Box 33028, St. Petersburg, Florida, 33733, due to his incarceration. The court granted the Motion on November 19, 2019.

On November 27, 2019, Lauer filed a Motion for Judgment on the Pleadings on the ground that Schade's lawsuit was barred by the statute of limitations. Lauer served Schade at the address identified in the Motion for

Reasonable Accommodation. Schade failed to respond. On January 14, 2020, the court granted the Motion for Judgment on the Pleadings based on its review of the pleadings and relevant documents attached thereto, and the Moton's substantive argument that the action was barred by the statute of limitations.

Schade filed a Motion to Open and Vacate Judgment due to Lack of Notice, arguing that he was not served with the Motion for Judgment on the Pleadings. On January 31, 2020, the trial court denied the Motion to Open, noting that Schade's "lack of a response to the Motion and lack of a brief did not impact the grounds for granting [Lauer's] Motion for Judgment on the Pleadings." (Order, 1/31/20). This appeal follows.

## II.

Schade argues that the trial court erred in overruling his Preliminary Objections to Paragraphs six through thirty-nine of Lauer's New Matter,[3] granting Lauer's Motion for Judgment on the Pleadings on the basis of the statute of limitations and in denying his Motion to Open the Judgment for lack of notice. (**See** Schade's Brief, at 5-6).

---

[3] Lauer suggests that we quash Schade's appeal from the Order overruling his Preliminary Objections as an impermissibly interlocutory appeal. (**See** Lauer's Brief, at 10-11). However, because it is well-settled that, "[o]nce an appeal is filed from a final order, all prior interlocutory orders become reviewable[,]" we decline to do so. **In re Bridgeport Fire Litigation**, 51 A.3d 224, 229 (Pa. Super. 2012) (citation omitted).

**A.**

Schade's first issue is that the trial court erred or abused its discretion when it overruled his Preliminary Objections to paragraphs six through thirty-nine of Lauer's New Matter because they "fail to comply with Pennsylvania Rule of Civil Procedure 1019 as a matter of law." (*Id.* at 13).  He argues that the trial court "refus[ed] to comport with *stare decisis*" and legal precedent when it "fail[ed] to strike or dismiss [this] factually unsupported new matter[], properly objected to by [Schade], without setting forth reasons to depart from controlling precedent." (*Id.* at 11).

As a preliminary matter, because we "cannot decide moot or abstract questions, nor can we enter a judgment or decree to which effect cannot be given[,]" we must decide whether this issue is moot as suggested by Lauer. *Orfield v. Weindel*, 52 A.3d 275, 277 (Pa. Super. 2012) (citation and internal quotation marks omitted); (*see* Lauer's Brief, at 13-14).  "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." *Weindel*, *supra* at 277.

> [T]his Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply:  1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

*Lico, Inc. v. Dougal*, 216 A.3d 1129, 1132 (Pa. Super. 2019) (citation omitted).

Instantly, the New Matter challenging the violation of the statute of limitations was contained in paragraph four and the court granted Judgment on the Pleadings based solely on that paragraph. (**See** Schade's Brief, at 13); (Lauer's Answer and New Matter, at 7, Paragraph 4). Therefore, the trial court's ruling as to paragraphs six through thirty-nine are moot.

Moreover, none of the exceptions under which we can consider a moot issue applies. This case does not involve a question of great public importance because it is a private dispute involving Lauer's representation of Schade. The issue of preliminary objections based on Rule 1019 is not capable of repetition that will elude appellate review in this case. Finally, Schade will not suffer detriment from the court's ruling on paragraphs six through thirty-nine of the Complaint because they bore no impact on its grant of Judgment on the Pleadings having been solely decided on the statute of limitations issue. Even if we were to find that the court erred in overruling the Preliminary Objections to those paragraphs' defenses raised in Lauer's New Matter, any order reversing the court's finding as to them would have no force or effect.

Accordingly, because we cannot decide moot questions or issue orders with no force or effect, Schade's Preliminary Objections issue is moot.

**B.**

Next, Schade claims that the trial court erred in granting Lauer's Motion for Judgment on the Pleadings.[4]  He raises two arguments in support of this allegation, maintaining that, (1) based on **Bailey v. Tucker**, 621 A.2d 108 (Pa. 1993), the trial court erred in determining the date when the statute of limitations began to run, and (2) the applicability of the statute of limitations was an issue for a jury.  (**See** Schade's Brief, at 18, 26, 30).

**1.**

Schade contends that under **Tucker**, the statute of limitations for bringing a criminal malpractice claim[5] did not begin to run until his new counsel filed a PCRA petition alleging trial counsel's ineffective assistance on July 7, 2015.  Because he filed his Complaint on July 3, 2019, it was brought within the four-year statute of limitations.  Schade misinterprets the holding of **Tucker**.

---

[4] "Our standard of review over a decision sustaining a judgment on the pleadings requires us to determine whether, on the facts averred, the law makes recovery impossible." **Cagey v. Commonwealth**, 179 A.3d 458, 463 (Pa. 2018) (citation omitted).

[5] Schade abandons any claim that his Complaint satisfied the two-year statute of limitations for criminal malpractice action brought in tort and focuses only on the four-year limitation period for criminal malpractice claims brought under a contract theory.  **See** 42 Pa.C.S. § 5525(a)(8) (Four-year statute of limitations applies to breach of contract claims).

*Tucker* observed first that, "[w]ith regard to the respective statutes of limitations, the rule in this Commonwealth is that the statutory period commences at the time the harm is suffered or, if appropriate, at the time the alleged malpractice is discovered." *Tucker*, *supra* at 115 (footnote omitted). "In the context of a criminal malpractice action, the time when the harm is suffered will, in the typical case, be easily identifiable, *i.e.*, the date of sentencing." *Id.* at 115-16. However, because the defendant's actions are presumed to be the legal cause of that harm, "the date a defendant becomes aware that his counsel may have been responsible for the harm will likely be harder to pinpoint." *Id.* at 116. In light of this, *Tucker* established that "[t]he appropriate starting point [from which the statute of limitations period commences] is the termination of the attorney-client relationship, since at that point the aggrieved defendant is aware of the injury (*i.e.*, the conviction), and is on clear notice to investigate any alternate cause of that harm which he believes to exist." *Id.* (footnote omitted); *see also M.A. v. Brabender*, 839 A.2d 1133 (Pa. 2003) ("Under *Bailey*, … it is clear that, in criminal legal malpractice actions, the statute of limitations begins to run on the date of sentencing, or no later than the termination date of the attorney/client relationship.").

In *Tucker*, Bailey was convicted of first-degree murder on April 13, 1970. Tucker was his trial counsel. On July 19, 1973, represented by new counsel, Bailey filed a petition under the Post–Conviction Hearing Act alleging,

- 10 -

*inter alia,* that he had been denied effective assistance of counsel.  On November 18, 1978, after a re-trial, Bailey was found guilty of voluntary manslaughter.  On October 22, 1980, Bailey commenced the criminal legal malpractice case against Tucker.  We affirmed the trial court's dismissal of the action because it was not filed within the applicable statute of limitations.

After setting forth what needs to be made out to sustain a criminal malpractice action, our Supreme Court likewise dismissed the action because it was not filed within the statute of limitations, observing that "[o]n July 19, 1973, represented by new counsel, appellant filed a petition under the Post– Conviction Hearing Act alleging, *inter alia*, that he had been denied effective assistance of counsel.  Therefore, the statute of limitations began to run no later than July 19, 1973, since on that date appellant was clearly on notice of appellee's alleged dereliction.  The instant malpractice action was commenced on October 22, 1980, well beyond any applicable period of limitation." ***Tucker***, ***supra*** at 253-54 (footnote omitted.).

However, this did not amend ***Tucker***'s holding that time in a criminal malpractice action began at sentencing or when the attorney/client relationship ended, because so many years later, it had to calculate when the relationship ended, and that relationship had to end "no later than" when the

Post-Conviction Hearing Act petition was filed. In short, that statement was merely an evidentiary finding.[6]

In this case, Schade was sentenced in the underlying criminal matter on January 7, 2015. Lauer filed a Petition to Withdraw on May 21, 2015, which the court scheduled for a hearing. On June 24, 2015, before the court could rule on the Petition to Withdraw, new counsel filed his Entry of Appearance, and on June 30, 2015, the court dismissed the Petition to Withdraw as moot because of new counsel's Entry of Appearance. Because 42 Pa.C.S. § 5525(a)(8) required that action had to be filed within four years, the statute of limitations would have expired on January 7, 2019 (four years after sentencing) or, at the very latest, in June 2019, four years after Lauer filed a Petition to Withdraw, new counsel filed his Entry of Appearance, and the court dismissed the Petition to Withdraw as moot. Accordingly, the trial court did not err when it granted Judgment on the Pleadings because Schade's action was more than four years after all the aforesaid events.

**a.**

We also find Schade's argument that, although he retained new counsel to represent him post-sentencing, the attorney/client relationship with Lauer

---

[6] ***Tucker*** involved a second, related case, ***Trice v. Morzenter***. In that case, Trice was convicted on March 25, 1975, on drug-related offenses. He filed a *pro se* petition to vacate his sentence on November 3, 1978. The Court held that, "at least as of that date, [trial counsel's] services had been terminated, and the statute of limitations … had begun to run." ***Id.*** at 254.

had not ended because he had not "relieved" him of his duties, to be completely unavailing. (**See** Schade's Brief, at 19). He provides no authority for this argument and, in fact, admits that upon retaining new counsel, whom he began paying on April 28, 2015, this counsel "developed issues of Lauer's previously unknown to [him]." (Schade's Brief, at 33); (**see also** Complaint, at Exhibit A). In fact, the exhibits attached to his own Complaint reveal that Schade made his last payment to Lauer on May 20, 2015. (**See** Complaint, at Exhibit A). We do not find this argument legally persuasive.

**b.**

Finally, we observe that Schade's reliance on Pennsylvania Rule of Criminal Procedure 120 for his argument that the attorney/client relationship had not terminated is likewise unavailing. Rule 120 provides, in pertinent part, that "[c]ounsel for a defendant may not withdraw his or her appearance except by leave of court" after filing a motion to withdraw. Pa.R.Crim.P. 120(B)(1)-(2). "[T]he court shall determine whether new counsel is entering an appearance, new counsel is being appointed to represent the defendant, or the defendant is proceeding without counsel." Pa.R.Crim.P. 120(B)(3).

Here, as previously noted, Lauer filed a Petition to Withdraw as Counsel in the underlying criminal proceedings on May 21, 2015, and new counsel entered his appearance on June 24, 2015. On June 30, 2015, the trial court dismissed Lauer's petition to withdraw as moot because new counsel already

had entered his appearance. Schade contends that the attorney/client relationship never ended because Lauer was never expressly granted leave to withdraw and, therefore, in spite of new counsel's entry of appearance, he remained (and presumably remains) Schade's representative. However, contrary to Schade's protestation, first, because Lauer's representation did end when new counsel entered his appearance and, second, because the trial court dismissed Lauer's Petition to Withdraw as moot because new counsel had entered his appearance, is the functional equivalent of allowing him to withdraw under Rule 120. *See Commonwealth v. Wamsher*, 577 A.2d 595, 600 (Pa. Super. 1990) (rejecting "rigidly literal construction" of Rules of Criminal Procedure that would lead to absurd or unreasonable result).

For all of these reasons, Schade's argument that the trial court erred in granting the Motion for Judgment on the Pleadings because it miscalculated the date on which Lauer's service was terminated and the statute of limitations began to run lacks merit.

**2.**

We next turn to Schade's argument that the court erred in granting the Motion for Judgment on the Pleadings because he pled applicability of the discovery rule, which was an issue of fact for the jury. (*See* Schade's Brief, at 30-34).

First, we observe that this issue is a red herring. The "discovery rule" arises in civil matters such as "creeping disease" and medical malpractice

cases as an exception to the rule that the statute of limitations begins to run from the date the harm is suffered, and "arises from the inability of an injured person, despite the exercise of due diligence, to know of the injury or its cause." *Ingenito v. AC & S, Inc.*, 633 A.2d 1172, 1174 (Pa. Super. 1993), *appeal denied*, 668 A.2d 113 (Pa. 1995) (citations omitted). "In creeping diseases cases … the statute of limitations begins to run when the injured person knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Id.* (citations omitted); *see Nicolau v. Martin*, 195 A.3d 880 (Pa. 2018) (discovery rule applicable in medical malpractice case when parties disputed whether plaintiff should have reasonably known if injuries were caused by misdiagnosis). "Where the issue involves a factual determination regarding what is a reasonable time for plaintiff to discover his injury and its cause, the issue is usually for the jury." *Id.* at 1175 (citations omitted). The court may decide the issue where "the undisputed facts lead unerringly to the conclusion that the time it took to discover an injury or its cause was unreasonable as a matter of law[.]" *Id.* (citations omitted).

However, as explained previously, *Tucker* held that, "in criminal legal malpractice actions, the statute of limitations begins to run on the date of sentencing, or no later than the termination date of the attorney/client relationship." *Brabender*, *supra* at 1136 (noting that, "[b]y contrast, in civil legal malpractice actions, the statute of limitations begins to run either at the

time the harm is suffered or alternatively at the time the alleged malpractice is discovered.") (citation omitted). Here, this was a date the trial court could determine from the pleadings and documents attached thereto. **See Rubin v. CBS Broadcasting, Inc.**, 170 A.3d 560, 564 (Pa. Super. 2017) (On a motion for judgment on the pleadings, "[i]n determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents.").

Accordingly, we conclude that the trial court properly granted Judgment on the Pleadings because, "on the facts averred, the law makes recovery impossible." **Cagey**, **supra** at 464 (citation omitted).

## C.

Next, we turn to Schade's argument that the court erred in denying his Motion to Open the Judgment[7] because he was not provided notice of the Motion for Judgment on the Pleadings. (**See** Schade's Brief, at 26).[8] He

---

[7] A ruling on a petition to open a judgment is committed to the trial court's wide discretion and will not be disturbed unless that discretion was manifestly abused. **See Cintas Corp. v. Lee's Cleaning Services, Inc.**, 700 A.2d 915, 919 (Pa. 1997).

[8] On its face, this issue appears to be one of the grounds on which Schade alleges that the court erred in granting the Motion for Judgment on the Pleadings. (**See** Schade's Brief, at 26). However, since Schade raised this issue in his Motion to Open, we interpret it as going to that request for relief.

In violation of our Rules, this section of Schade's brief does not provide any pertinent citation to authorities or discussion thereof and, therefore, is waived.

- 16 -

maintains that neither Lauer's Motion for Judgment on the Pleadings nor the court's briefing order contained his Department of Corrections (DOC) number, "almost as if it were a concerted effort to deceive [him]." (***Id.*** at 28). In his Motion to Open, Schade maintained that he did not receive notice of Lauer's Motion for Judgment on the Pleadings until he received the order of judgment. (***See*** Motion to Open and Vacate Judgement Due to Lack of Notice, 1/30/20, at 1).

> [I]f a petition to open a judgment is to be successful, it must meet the following test: (1) the petition to open must be promptly filed; (2) the failure to appear or file a timely answer must be excused; and (3) the party seeking to open the judgment must show a meritorious defense.

***Cintas Corp.***, ***supra*** at 919 (citations omitted).

Here, on November 14, 2019, Schade filed a Motion for a Reasonable Accommodation Regarding Rule 1026.[9] In the Motion, Schade stated that pursuant to a new DOC policy, Lauer was required to serve him with all pleadings and motions via U.S. First Class Mail at Smart Communications/PA DOC, SCI Coal Township, K. Bernard Schade, MA 1290, P.O. Box 33028, St. Petersburg, Florida 33733. (***See*** Motion for Reasonable Accommodation, at

---

(***See id.*** at 26-29); Pa.R.A.P. 2101, 2119(a)-(b). Moreover, for the reasons discussed above, it would not merit relief.

[9] Pursuant to Rule 1026, "every pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading[.]" Pa.R.C.P. 1026(a).

2, Paragraph 3). Schade requested that because the new policy causes a delay in receiving mail, he be permitted to provide any responses to motions within twenty days' receipt of the pleading from the DOC's mail system to be in compliance with Rule 1026. (***See id.*** at 3). The court granted the Motion and the Certificate of Service[10] attached to the Motion for Judgment on the Pleadings reflects that Lauer served Schade at the requested address.

Therefore, Schade failed to provide a valid excuse for his failure to respond to the Motion for Judgment on the Pleadings. ***See Cintas Corp.***, ***supra*** at 919. Moreover, the trial court's January 30, 2020 order denying Schade's Motion to Open reflects that the court granted the Motion for Judgment on the Pleadings on the merits of the statute of limitations argument, not for Schade's failure to respond. As discussed more fully elsewhere in this decision, Schade does not have a meritorious defense to the statute of limitations issue. ***See id.*** The court did not manifestly abuse its discretion in denying Shade's Motion to Open. ***See id.***

To reiterate, Schade's argument challenging the Order overruling his Preliminary Objections is moot and his challenges to the Orders granting Lauer's Motion for Judgment on the Pleadings and denying his Motion to Open lack merit.

---

[10] Civil Procedure Rule 208.2 provides, in pertinent part, that "[a] motion shall include a certificate of service which sets forth the manner of service including the name of an attorney of record … and the address at which service was made[.]" Pa.R.C.P. 208.2(a)(4).

Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date:* *9/23/2020*